T.C. Summary Opinion 2007-138

UNITED STATES TAX COURT

ROBERT D. AND CAROL A. BERRYMAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15183-06S.          Filed August 8, 2007.

Robert D. and Carol A. Berryman, pro se.

Ann L. Darnold, for respondent.

GOEKE, Judge:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

---

[1]All section references are to the Internal Revenue Code in
effect for the years at issue.

other court, and this opinion shall not be treated as precedent for any other case.

Petitioners operated a purported home-based business as marketers for a direct marketing company. Respondent determined deficiencies of tax of $11,824, $7,845, and $13,983 for tax years 2002, 2003, and 2004, respectively. Respondent also imposed penalties of $2,364.80, $1,569, and $2,796.60 for 2002, 2003, and 2004, respectively. Because petitioners' marketing activities were not for profit, and because petitioners failed to substantiate part of their 2002 home mortgage interest deduction, we sustain respondent's determinations.

## Background

Some of the facts have been stipulated and are so found. Petitioners are husband and wife and resided in Tulsa, Oklahoma at the time their petition was filed. Petitioners are both employed full time, Mr. Berryman with the Cimarron Telephone Co. and Mrs. Berryman as a teacher in a local public school system.

Beginning in 1992, petitioners became involved with a company called Melaleuca, Inc. Melaleuca is a direct marketing company which sells a line of health and wellness products. Melaleuca calls their distributors marketing executives. As Melaleuca marketing executives, petitioners agreed to purchase a certain volume of Melaleuca products which they received at a discount. Petitioners could then earn commissions by recruiting

others to join Melaleuca.  The amount of commissions petitioners would receive was determined by the number of individuals recruited as well as the volume of products that these individuals signed up to purchase from Melaleuca.

Prior to their involvement with Melaleuca, petitioners had no experience in running a business.  Despite this lack of experience, petitioners did little to educate themselves in the economics or logistics of operating a profitable business and instead relied solely on the guidance provided by Melaleuca insiders.

Petitioners hired their son to help set up and maintain an accounting system on their home computer.  Petitioners used this system to track the income and expenses related to Melaleuca. Petitioners did not, however, use this accounting system to help evaluate their business or try to make it more profitable.  In addition, petitioners did not create or maintain any business plan or budgets with respect to their Melaleuca marketing activities.

Petitioners' attempts to recruit other marketing executives consisted of hosting gatherings of friends and acquaintances in their home, where petitioners would present Melaleuca and try to persuade these individuals to join.  There is no evidence, however, that petitioners advertised these gatherings by any means other than word of mouth.  Petitioners achieved limited

success in actually recruiting others to join Melaleaca. For each individual petitioners were able to recruit, petitioners received a commission from $10 to $150.

Petitioners timely filed their Federal income tax returns with attached Schedules C, Profit or Loss From Business, for the years in issue. On their respective Schedules C for 2002, 2003, and 2004, petitioners reported gross receipts from their Melaleuca activities of $5,300, $3,674, and $3,030. Petitioners then claimed losses of $49,590, $45,114, and $67,738 for 2002, 2003, and 2004, respectively. These losses included numerous personal expenses claimed as business deductions. For instance, petitioners claimed deductions for cat litter, golf balls, tickets to Oklahoma State University football games, and a Dish Network subscription. Petitioners also claimed a deduction for a life insurance policy they purchased. Petitioners offset these losses against combined wages of $95,824, $91,662, and $103,693 for 2002, 2003, and 2004, respectively.

In the notice of deficiency, respondent disallowed the losses claimed on the Schedules C and asserted penalties under section 6662(a). In addition, for 2002, respondent disallowed $1,462 of petitioners' claimed mortgage interest deduction, for lack of substantiation.

## Discussion

A.  Petitioners' Direct Marketing Activities

Section 183 restricts taxpayers from deducting losses from an activity that is not "engaged in for profit".  Sec. 183(a).  An activity is engaged in for profit if the taxpayer entertained an actual and honest profit objective in engaging in the activity.  Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.  The taxpayer's expectation of profit must be in good faith.  Allen v. Commissioner, 72 T.C. 28, 33 (1979) (citing sec. 1.183-2(a), Income Tax Regs.).

In deciding whether petitioners operated their direct marketing activities for profit, we consider the following nine factors:  (1) The manner in which they carried on the activity; (2) their expertise or that of their advisers; (3) the time and effort they expended in carrying on the activity; (4) the expectation that the assets they used in the activity may appreciate in value; (5) their success in carrying on other similar or dissimilar activities; (6) their history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which they earned; (8) their financial status; and (9) whether elements of personal pleasure or recreation are involved.  See sec. 1.183-2(b)(1) through (9), Income Tax Regs.

No single factor, nor even the existence of a majority of factors favoring or disfavoring the existence of a profit objective, is controlling. <u>Brannen v. Commissioner</u>, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs. Rather, the relevant facts and circumstances of the case are determinative. See <u>Golanty v. Commissioner</u>, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

After careful consideration, we are satisfied that petitioners did not engage in the marketing of Melaleuca products with a profit objective.[2] Petitioners did not prepare or maintain any business plans, financial projections, or budgets with respect to their Melaleuca activities. While petitioners used a computerized accounting program to track income and expenses, there is no evidence that petitioners used that information to try to make their activities profitable. See <u>id.</u> at 430.

Before becoming Melaleuca marketing executives, petitioners had no experience in running a business. Nevertheless, they did not seek independent business advice at the outset nor after sustaining year after year losses. Instead, at most, petitioners

---

[2]We note that petitioners did not argue to shift the burden of proof under sec. 7491(a). Regardless, the outcome of this case is determined on the preponderance of the evidence after trial and is unaffected by sec. 7491(a). See <u>Estate of Bongard v. Commissioner</u>, 124 T.C. 95, 111 (2005).

relied upon Melaleuca insiders. This failure to become educated in the economics of operating a profitable home-based business strongly suggests that petitioners were using and marketing Melaleuca products for purposes other than profit. See Ogden v. Commissioner, T.C. Memo. 1999-397, affd. 244 F.3d 970 (5th Cir. 2001).

Petitioners' Melaleuca activities have resulted in substantial losses. While losses that are incurred in the initial stages of an activity do not necessarily suggest the absence of an honest profit objective, losses that continue without explanation may indicate the lack of a profit objective. See Golanty v. Commissioner, supra at 427. Petitioners reported losses of $49,590, $45,114, and $67,738, for the years at issue. This after having already been involved with Melaleuca since 1992. Further, despite these year after year losses, there is no evidence that petitioners changed tactics to increase the likelihood of earning a profit.

Both petitioners worked full-time jobs. This left little time for petitioners to spend on their Melaleuca activities. Despite this apparent lack of time, Mr. Berryman testified that on as many as five nights a week, petitioners would host gatherings of between 1 and 25 prospective customers. We find Mr. Berryman's testimony lacked credibility, especially in the

absence of any efforts on the part of Mr. Berryman to locate these prospective customers other than by word of mouth.

The one financial success, at least before respondent caught on, that petitioners enjoyed with their Melaleuca activities was offsetting their losses against wages of $95,824, $91,662, and $103,693 for 2002, 2003, and 2004, respectively, to create substantial tax savings. Of course, this itself is an indication that petitioners were more interested in the tax savings realized by converting personal expenses into tax deductions than they were with operating a business for profit.

In sum, we are satisfied that petitioners' primary purpose for engaging in the promotion of Melaleuca products was not to profit. Accordingly, petitioners are not entitled to the deductions here in dispute beyond those allowed by respondent under section 183(b).

B.  Petitioners' 2002 Home Mortgage Interest Deduction

Respondent also adjusted the home mortgage interest deduction claimed by petitioners in 2002 by $1,462 for lack of substantiation that they paid such interest. Section 163(h) allows a deduction for interest paid on a qualified residence. Sec. 163(h)(2)(D). "Qualified residence" within the meaning of section 163 may be either the taxpayer's principal residence or another residence selected by the taxpayer and used as a residence. Sec. 163(h)(4)(A)(i). As with any deduction,

petitioners must be able to substantiate the amount claimed.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioners provided no documentation before, during, or after trial, such as canceled checks, that would substantiate their claim that they made payments of home mortgage interest in excess of the $10,123 allowed by respondent for 2002.  At trial, Mr. Berryman did not testify as to any specific payments of home mortgage interest and included as an exhibit the Forms 1098, Mortgage Interest Statement, only for taxable years 2003 and 2004.  Accordingly, without any evidence that petitioners actually paid the $1,462, we sustain respondent's adjustment with respect to petitioners' 2002 itemized mortgage interest deduction.

C.   Section 6662(a) Accuracy-Related Penalties

Finally, we address respondent's assertion of penalties under section 6662(a) and (b).[3]  Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment that is so attributable.  The term

---

[3]Respondent bears the burden of production with respect to the accuracy-related penalties.  Sec. 7491(c).  In order to meet this burden of production, respondent must produce sufficient evidence that it is appropriate to impose the accuracy-related penalties.  Once respondent has done so, the burden of proof is upon petitioners.  Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

"negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and any failure to keep adequate books and records or to substantiate items properly, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c).

While petitioners are by no means sophisticated in matters related to tax, the manner in which petitioners operated their purported business and the character of the deductions claimed as part of that purported business, convince us that the underpayment of tax for each year was attributable to a disregard of the rules and regulations. For instance, petitioners claimed deductions for the cost of cat litter, a Dish Network subscription, and a life insurance policy.

Petitioners rely on Nitschke v. Commissioner, T.C. Memo. 2000-230, for support that Melaleuca is a business. In Nitschke, the Commissioner challenged whether certain claimed expenses of the taxpayer, related to Melaleuca activities, were ordinary and necessary under section 162(a) and did not challenge whether the taxpayer was operating their Melaleuca activities for profit. Thus, our decision in Nitschke is of no relevance to whether

petitioners here were carrying on their Melaleuca activities for profit. Accordingly, respondent's determination that petitioners are liable for accuracy-related penalties under section 6662(a) is sustained.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.